Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/17/2026 08:07 AM CST

State of Nebraska, appellant, v.
Matthew J. Earhart, appellee.

___ N.W.3d ___

Filed February 10, 2026.    No. A-25-018.

1.  **Constitutional Law: Statutes: Judgments: Appeal and Error.** The
    constitutionality and construction of a statute are questions of law,
    regarding which an appellate court is obligated to reach conclusions
    independent of those reached by the court below.
2.  **Criminal Law: Prosecuting Attorneys: Appeal and Error.** The pur-
    pose of a review in an error proceeding filed by a county attorney is
    to provide an authoritative exposition of the law for use as a precedent
    in similar cases which may now be pending or which may subse-
    quently arise.
3.  **Constitutional Law: Statutes: Sentences.** Both U.S. Const. art. I, § 10,
    and Neb. Const. art. I, § 16, provide that no ex post facto law may be
    passed. A law which purports to apply to events that occurred before the
    law's enactment, and which disadvantages a defendant by creating or
    enhancing penalties that did not exist when the offense was committed,
    is an ex post facto law and will not be endorsed by the courts.
4.  **Constitutional Law: Criminal Law: Other Acts: Time.** The retroac-
    tive application of civil disabilities and sanctions is permitted; it is only
    criminal punishment that the Ex Post Facto Clause prohibits.
5.  **Sentences: Statutes: Intent.** To determine whether a statute imposes
    civil sanctions or criminal punishment, a court must apply a two-
    pronged intent-effects test.
6.  **Sentences: Statutes: Legislature: Intent.** Under the two-pronged
    intent-effects test, if the intention of the Legislature was to impose pun-
    ishment, that ends the inquiry.
7.  ____: ____: ____: ____. If the intention of the Legislature was to enact
    a regulatory scheme that is civil and nonpunitive, a court must further
    examine whether the statutory scheme is so punitive either in purpose or
    effect as to negate the State's intention to deem it "civil."

8. **Sentences: Statutes: Legislature: Intent: Proof.** Because a court ordinarily defers to the Legislature's stated intent, only the clearest proof will suffice to override that intent and transform what has been denominated a civil remedy into a criminal penalty.

9. **Statutes.** Whether a statutory scheme is civil or criminal is a question of statutory construction.

10. **Statutes: Legislature: Intent.** Statutory construction requires the court to consider the statute's text and its structure to determine the legislative objective.

11. \_\_\_\_: \_\_\_\_: \_\_\_\_. If the court decides that the Legislature intended to create a civil, nonpunitive statutory scheme, the court must then determine whether the effect of a statute is so punitive as to negate the Legislature's intent.

12. **Sentences: Statutes: Legislature: Intent.** To determine whether the effect of a statute is so punitive as to negate the Legislature's intent, a court should observe several factors that are neither exhaustive nor dispositive, but, rather, serve as useful guideposts.

13. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. The factors used to determine whether the effect of a statute is so punitive as to negate the Legislature's intent include (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

14. **Convicted Sex Offender: Statutes: Legislature: Intent.** The Legislature enacted Nebraska's Sex Offender Registration Act to establish a civil regulatory scheme to protect the public from sex offenders.

15. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. It was the Legislature's intent in amending Neb. Rev. Stat. § 29-4005 (Reissue 2016) to reform the civil regulatory scheme for sex offender registration, and it was not the Legislature's intent to punish.

16. **Convicted Sex Offender: Appeal and Error.** In determining whether the effects of Neb. Rev. Stat. § 29-4005 (Reissue 2016) are punitive, an appellate court considers the factors set forth by the U.S. Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).

17. \_\_\_\_: \_\_\_\_. The factors in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), that an appellate court considers most relevant to an analysis of whether the effects of Neb.

Rev. Stat. § 29-4005 (Reissue 2016) are punitive are: (1) whether the statute promotes the traditional aims of punishment (retribution and deterrence), (2) whether it imposes an affirmative disability or restraint, (3) whether it has been regarded in our history and traditions as punishment, (4) whether it has a rational alternative nonpunitive purpose, and (5) whether or not it is excessive with respect to that purpose.

18. **Statutes.** The requirement of registration is not punitive or retributive.

19. **Convicted Sex Offender: Statutes: Sentences.** Although failure to comply with Nebraska's Sex Offender Registration Act imposes a criminal penalty, such punishment is not for behavior that occurred before the statute's enactment.

20. ____: ____: ____. Compliance is not retribution for the crime that resulted in a person's being subjected to Nebraska's Sex Offender Registration Act; instead, it punishes the action of failing to comply once the person is subject to registration requirements.

21. **Statutes: Time.** An increase in the durational period of registration is not retributive, because registration is not punishment at all.

22. **Convicted Sex Offender: Statutes.** Neb. Rev. Stat. § 29-4005 (Reissue 2016), imposes no affirmative disability or restraint, as it does not prohibit a sex offender from doing anything that the sex offender would otherwise be able to do.

23. ____: ____. Nebraska's Sex Offender Registration Act and other sex offender registration requirements have not historically been punishment.

24. ____: ____. Registration in and of itself is not excessive for the purpose of protecting the public and enhancing future law enforcement efforts, and simply increasing the time for such registration under Nebraska's Sex Offender Registration Act cannot be considered to exceed that purpose.

25. **Constitutional Law: Convicted Sex Offender.** The retroactive increase in sex offender registration periods is not an ex post facto violation.

26. **Convicted Sex Offender: Statutes: Legislature.** The extension of a sex offender's obligation to register is a product of legislative fine-tuning of a civil regulatory scheme, not the imposition of retroactive punishment.

27. **Constitutional Law: Convicted Sex Offender.** The 2009 amendments to Neb. Rev. Stat. § 29-4005(1) (Reissue 2016) are not punitive and are not an ex post facto violation.

28. **Constitutional Law: Double Jeopardy.** The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and of article I, § 12, of the Nebraska Constitution protects an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.

29. \_\_\_\_ : \_\_\_\_. Generally, jeopardy does not attach to a criminal prosecution merely because the State has filed an information and a court has conducted a preliminary hearing and disposed of pretrial motions.

Appeal from the District Court for Lincoln County: CINDY R. VOLKMER, Judge. Reversed and remanded with directions.

Kortnei Smith, Deputy Lincoln County Attorney, for appellant.

Robert P. Lindemeier, Lincoln County Public Defender, for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

PIRTLE, Judge.

## INTRODUCTION

The district court for Lincoln County dismissed the charge against Matthew J. Earhart for failure to report an address change pursuant to Nebraska's Sex Offender Registration Act (SORA). The State appeals, arguing that the court erred in finding that Earhart was required to register under SORA for only 10 years, rather than 25 years as required by the 2009 amendments. Based on the reasons that follow, we reverse, and remand with directions to the district court.

## BACKGROUND

In November 2002, Earhart was charged with first degree sexual assault of a child for subjecting a person of less than 16 years of age to sexual penetration, a Class II felony. In May 2003, he pled no contest to the lesser charge of sexual assault of a child, a Class IIIA felony. The district court sentenced him to 240 days' imprisonment, and he was informed his conviction subjected him to SORA's registration requirement.

At the time of Earhart's sentencing, SORA stated:

(1) . . . [A]ny person to whom [SORA] applies shall be required to register during any period of supervised release, probation, or parole and shall continue to comply

with the act for a period of ten years after the date of discharge from probation, parole, or supervised release from incarceration, whichever date is most recent. . . .

(2) A person sentenced for a registrable offense under section 29-4003 shall be required to register under the act for the rest of his or her life if such registrable offense is an aggravated offense or the person has a prior conviction for a registrable offense. The sentencing court shall make that fact part of the sentencing order.

Neb. Rev. Stat. § 29-4005 (Cum. Supp. 2002).

In 2009, the Nebraska Legislature amended SORA to provide for different durations of registration depending on the severity of the offender's crime. As a result of the amendments, § 29-4005(1) (Reissue 2016) currently provides in part:

(b) The full registration period is as follows:

(i) Fifteen years, if the sex offender was convicted of a registrable offense under section 29-4003 not punishable by imprisonment for more than one year;

(ii) Twenty-five years, if the sex offender was convicted of a registrable offense under section 29-4003 punishable by imprisonment for more than one year; or

(iii) Life, if the sex offender was convicted of a registrable offense under section 29-4003 punishable by imprisonment for more than one year and was convicted of an aggravated offense or had a prior sex offense conviction or has been determined to be a lifetime registrant in another state, territory, commonwealth, or other jurisdiction of the United States, by the United States Government, by court-martial or other military tribunal, or by a foreign jurisdiction.

In August 2024, the State charged Earhart with failure to report an address change, second offense, to the Lincoln County sheriff on June 21, as required by SORA. In October, Earhart filed a motion to dismiss the action. In this motion, he averred that he was convicted of a misdemeanor sexual assault in Colorado, that he was ordered to register as a sex

offender for a period of 10 years, and that the 10-year period had expired.

A hearing was held on Earhart's motion to dismiss in November 2024. Earhart asserted he was being told by the State that he had to register under SORA for his entire life. Earhart argued this violated his right against double jeopardy and the federal constitution's Ex Post Facto Clause. Earhart maintained that the State was barred from increasing his registration duration retroactively, as his original plea agreement stipulated he would have to register for only 10 years. The State articulated that it was not concerned with Earhart's Colorado conviction but instead argued that his Nebraska 2003 conviction subjected him to a lifetime registration under the 2009 amendments to SORA. Earhart asserted his belief that his period of registration for his 2003 conviction ended in 2012. Neither party presented any evidence about Earhart's Colorado conviction.

Following the hearing, the court issued an order granting Earhart's motion to dismiss the criminal charge against him for failure to report an address change.

In addition, in this order, the court reviewed § 29-4005 as it appeared in 2003. The district court determined that to apply lifetime registration to Earhart, there had to be either (1) a previous conviction of a sex offense or (2) an aggravated charged offense. The district court found that neither of these requirements existed. The court had no information about the Colorado conviction other than that it occurred in 2006, and that Earhart was required to register for a period of 10 years. Therefore, in applying the 2003 statute, the court determined Earhart was required to register under SORA for a period of only 10 years, which ended on December 27, 2013. As such, it concluded Earhart was not subject to SORA on June 21, 2024, the date it was alleged he failed to report his address change.

The State filed an application for leave to docket an appeal, pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2024), which we granted.

## ASSIGNMENT OF ERROR

The State assigns, restated and consolidated, that the district court erred in granting Earhart's motion to dismiss because it failed to apply SORA's 2009 amendments, which required him to register as a sex offender for a period of 25 years.

## STANDARD OF REVIEW

[1] The constitutionality and construction of a statute are questions of law, regarding which we are obligated to reach conclusions independent of those reached by the court below. *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012).

## ANALYSIS

[2] This is an appeal by the Lincoln County Attorney's office pursuant to § 29-2315.01. The purpose of a review in an error proceeding filed by a county attorney is to provide an authoritative exposition of the law for use as a precedent in similar cases which may now be pending or which may subsequently arise. See *State v. Wilen*, 4 Neb. App. 132, 539 N.W.2d 650 (1995). See, also, Neb. Rev. Stat. § 29-2316 (Reissue 2016).

The State asserts the 2009 amendments to SORA apply to Earhart's sentence and lengthened the period he was subject to SORA from 10 years to 25 years. As previously stated, § 29-4005(1)(b)(ii), as amended in 2009, provides that the registration period is 25 years if the sex offender was "convicted of a registrable offense under section 29-4003 punishable by imprisonment for more than one year." Earhart was convicted of sexual assault of a child, a Class IIIA felony, which at the time of Earhart's conviction had a maximum sentence of 5 years' imprisonment, see Neb. Rev. Stat. § 28-105 (Reissue 2002), and currently carries a maximum sentence of 3 years' imprisonment, see § 28-105 (Supp. 2025). The State argues that because Earhart was convicted of a registrable offense that was and continues to be punishable for more than 1 year's imprisonment, he is required to register for a period of 25 years. Earhart asserts the retroactive application of the

amendment violates the Ex Post Facto Clauses of the U.S. and
Nebraska Constitutions.

We note that at the time of the hearing on the motion to
dismiss, the State argued that Earhart had to register for life
based on the 2009 amendments to SORA. However, it is now
the State's position that, based on the nature of Earhart's 2003
conviction and the 2009 amendments to SORA, Earhart was
required to register for 25 years.

*Relevant Legal Principles.*

[3,4] Both U.S. Const. art. I, § 10, and Neb. Const. art.
I, § 16, provide that no ex post facto law may be passed. A
law which purports to apply to events that occurred before
the law's enactment, and which disadvantages a defendant by
creating or enhancing penalties that did not exist when the
offense was committed, is an ex post facto law and will not
be endorsed by the courts. *State v. Harris, supra.* The retroac-
tive application of civil disabilities and sanctions is permitted;
it is only criminal punishment that the Ex Post Facto Clause
prohibits. *Id.*

[5-10] Thus, the relevant question is whether § 29-4005
imposes civil sanctions or criminal punishment. To determine
whether a statute imposes civil sanctions or criminal punish-
ment, a court must apply a two-pronged intent-effects test.
*State v. Harris, supra*. See *Smith v. Doe*, 538 U.S. 84, 123
S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Under this test, if
the intention of the Legislature was to impose punishment,
that ends the inquiry. *State v. Harris, supra.* If, however, the
intention was to enact a regulatory scheme that is civil and
nonpunitive, we must further examine whether the statutory
scheme is so punitive either in purpose or effect as to negate
the State's intention to deem it "civil." *Id.* Because we ordi-
narily defer to the Legislature's stated intent, only the clearest
proof will suffice to override that intent and transform what
has been denominated a civil remedy into a criminal pen-
alty. *Id.* Whether a statutory scheme is civil or criminal is a

question of statutory construction. *Id.* This requires the court to "consider the statute's text and its structure to determine the legislative objective." *Smith v. Doe*, 538 U.S. at 92.

[11-13] If the court decides that the Legislature intended to create a civil, nonpunitive statutory scheme, the court must then determine whether the effect of a statute is so punitive as to negate the Legislature's intent. See *State v. Worm*, 268 Neb. 74, 680 N.W.2d 151 (2004). To do so, a court should observe several factors that are neither exhaustive nor dispositive, but, rather, serve as useful guideposts. See *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012). These factors include:

> (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id*. at 225, 817 N.W.2d at 270. See, also, *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).

*Legislative Intent.*

[14] The Nebraska Supreme Court has previously found that the Legislature enacted SORA to establish a civil regulatory scheme to protect the public from sex offenders. *State v. Harris, supra.* However, SORA was amended in 2009, and therefore, we must consider whether the amendments to § 29-4005 are civil or punitive.

[15] The Legislature, enacting the 2009 amendments to § 29-4005, introduced the bill to bring Nebraska in compliance with the Adam Walsh Child Protection Safety Act of 2006. See, Pub. L. 109-248, 120 Stat. 587 (2006); Introducer's Statement of Intent, L.B. 285, Judiciary Committee, 101st

Leg., 1st Sess. (Mar. 18, 2009). The purpose of the Adam Walsh Child Protection Safety Act of 2006 is to protect the public, in particular children, from violent sex offenders via a more comprehensive, nationalized system for registration of sex offenders. See Introducer's Statement of Intent, L.B. 285, *supra*. The statement of intent shows that SORA has a dual purpose: protecting the public from sex offenders and conforming to national standards various aspects of sex offender registration requirements. Introducer's Statement of Intent, L.B. 285, *supra*. Therefore, we determine that it was the Legislature's intent in amending § 29-4005 to reform the civil regulatory scheme for sex offender registration and that it was not the Legislature's intent to punish.

*Effects of Legislation.*

[16] Having determined that the Legislature did not intend § 29-4005 as a punishment, we must now determine whether Earhart established by the clearest proof that the effects of the statutory language at issue negate the Legislature's intent to create a civil, nonpunitive statutory scheme. See *State v. Harris, supra*. Earhart argues that the amended scheme is punitive in effect because it imposes significant affirmative obligations, calls for public shaming, and creates restrictions that mirror criminal punishment. In determining whether the effects of the statute are punitive, we consider the factors set forth by the U.S. Supreme Court in *Kennedy v. Mendoza-Martinez, supra*. See *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012).

[17] These are the *Kennedy v. Mendoza-Martinez* factors we consider most relevant to our analysis: (1) whether the statute promotes the traditional aims of punishment (retribution and deterrence), (2) whether it imposes an affirmative disability or restraint, (3) whether it has been regarded in our history and traditions as punishment, (4) whether it has a rational alternative nonpunitive purpose, and (5) whether or not it is excessive

with respect to that purpose. See *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003).

[18-21] First, we consider whether the statute is retributive. The requirement of registration is not punitive or retributive. See *Shepard v. Houston*, 289 Neb. 399, 855 N.W.2d 559 (2014). Although failure to comply with SORA imposes a criminal penalty, such punishment is not for behavior that occurred before the statute's enactment. See *State v. Harris, supra*. Compliance is not retribution for the crime that resulted in a person's being subjected to SORA; instead, it punishes the action of failing to comply once the person is subject to registration requirements. See *State v. Harris*, *supra*. Therefore, an increase in the durational period of registration is not retributive, because registration is not punishment at all. See *Shepard v. Houston, supra*.

[22,23] Second, we have determined that § 29-4005 imposes no affirmative disability or restraint, as it does not prohibit a sex offender from doing anything that the sex offender would otherwise be able to do. Third, we find that SORA and other sex offender registration requirements have not historically been punishment.

[24] Finally, we consider SORA's nonpunitive purpose, and whether it is excessive in relation to that purpose. SORA has a legitimate nonpunitive purpose of public safety, and we must determine whether increasing the time required to register is excessive in relation to the purpose. We determine it is not excessive in relation to that purpose, as registration in and of itself is not excessive for the purpose of protecting the public and enhancing future law enforcement efforts, and simply increasing the time for such registration under SORA cannot be considered to exceed that purpose.

Although the Nebraska Supreme Court has not addressed whether changing the registration requirement from 10 years to 25 years under § 29-4005 is an ex post facto violation, the court has considered similar issues. For instance, in *State v. Worm*, 268 Neb. 74, 680 N.W.2d 151 (2004), the defendant

was required to register for 10 years at the time of his offense. Based on subsequent amendments to § 29-4005(2), the registration requirement increased from 10 years to a lifetime requirement. The court determined that the registration provisions were not punitive in either purpose or effect and, therefore, were not an ex post facto violation. See *State v. Worm, supra.*

Further, in *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012), the court considered two SORA statutes, one of which was Neb. Rev. Stat. § 29-4004(9) (Cum. Supp. 2010). In that case, when the defendant was convicted of sexual assault of a child and third degree sexual assault, defendants were allowed 5 working days to report a change and were not required to report a change or update their registration in person. Section 29-4004(9) was amended in 2009 to provide that a defendant has 3 working days to report a change in address and must do so in person. The defendant in *Harris* contended that the changes to § 29-4004(9) were an ex post facto violation. Ultimately, the Supreme Court found that § 29-4004(9) was not an ex post facto violation and concluded that most of the *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), factors weighed in favor of § 29-4004(9) being a civil statute.

Section 29-4004(9) changed the requirements and imposed new obligations on persons based on their past crimes. The amendment at issue in *Harris* retroactively shortened the amount of time a person had to register based on that person's status as a transient and required in-person registration. Comparatively, § 29-4005 retroactively increased the amount of time required for someone to register; but unlike the statute at issue in *Harris*, § 29-4005 imposed no new duty, just an extension of time for a requirement that applied before the statute was amended. The amendment to the statute discussed in *Harris* seems more restrictive than the change to § 29-4005 in the present case, yet in *Harris*, the court found it was not an ex post facto violation.

[25,26] Other courts have also found that increasing the amount of time a defendant must register under the applicable sex offender registration statutes were not ex post facto clause violations. The Kansas Supreme Court found that retroactive applications of their sex offender registration statute that extended offender registration duration was not an ex post facto violation. See *State v. Davidson*, 314 Kan. 88, 495 P.3d 9 (2021). The Missouri Supreme Court determined that the retroactive increase in sex offender registration periods was not an ex post facto violation after weighing the *Kennedy v. Mendoza-Martinez* factors. See *Doe v. Olson*, 696 S.W.3d 320 (Mo. 2024). The Rhode Island Supreme Court concluded that the extension of a sex offender's obligation to register was a product of legislative fine-tuning of a civil regulatory scheme, not the imposition of retroactive punishment. See *State v. Gibson*, 182 A.3d 540 (R.I. 2018).

We note that some courts have found an increase in registration time to be an ex post facto violation. See, *Starkey v. Oklahoma Dept. of Corrections*, 305 P.3d 1004 (Okla. 2013); *State v. Letalien*, 985 A.2d 5 (Me. 2009); *Doe v. State*, 189 P.3d 999 (Alaska 2008).

[27] We conclude that all the *Kennedy v. Mendoza-Martinez* factors weigh in favor of § 29-4005(1) being a civil statute. Thus, no factors weigh in favor of the section being punitive, thereby not rising to the clearest proof standard. We conclude that the 2009 amendments to § 29-4005(1) are not punitive and are not an ex post facto violation. We agree with the State that the district court erred in failing to apply § 29-4005 as amended in 2009, requiring Earhart to register under SORA for 25 years.

*Double Jeopardy.*

This appeal was brought by the State pursuant to § 29-2315.01. Section 29-2316 provides that when the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been

placed legally in jeopardy prior to the entry of such an errone-ous order, the cause against the defendant may proceed.

[28] The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and of article I, § 12, of the Nebraska Constitution protects "'"an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."'" *State v. Bottolfson*, 259 Neb. 470, 478, 610 N.W.2d 378, 385 (2000), quoting *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957).

[29] Generally, jeopardy does not attach to a criminal pros-ecution merely because the State has filed an information and a court has conducted a preliminary hearing and disposed of pretrial motions. *State v. Irish*, 223 Neb. 578, 391 N.W.2d 137 (1986). In this case, the district court dismissed the charge against Earhart without a jury and before it had begun to hear evidence as to Earhart's guilt. Therefore, we conclude Earhart has not been placed legally in jeopardy.

## CONCLUSION

We conclude that the district court erred in granting Earhart's motion to dismiss because under the current version of § 29-4005, Earhart was required to report his change of address on June 21, 2024, as alleged in the charge against him. Accordingly, we reverse, and remand with directions for the district court to vacate its order dismissing the charge of failing to report an address change, second offense, against Earhart.

REVERSED AND REMANDED WITH DIRECTIONS.